**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

KEVIN J. BERG,

   *Plaintiff*,

v.                                                                  Case No.  SA-25-CV-00661-JKP

OFFICER THOMAS MICHAEL RI-
VAS, BADGE #1640, CITY OF SAN
ANTONIO, M. GANDARA, BADGE
#252;

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Officer Thomas Michael Rivas's Motion to Dismiss for Failure to State a Claim. *ECF Nos. 54, 62*. Plaintiff responded. *ECF No. 59*. Upon consideration the Motion to Dismiss is **GRANTED**.

## FACTUAL BACKGROUND

At this stage, the Court accepts all well-pleaded facts in the First Amended Complaint as true. *See Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019); *ECF No. 44*. Plaintiff, Kevin Berg, alleges the following: This case arises from an encounter between Berg and Defendant Officers Rivas and Gandara. At approximately 10:00 p.m. on April 11, 2024, while on patrol, Officer Rivas encountered a vehicle and possible suspects reported to be involved in a recent crime. Rivas activated his overhead emergency lights to conduct the traffic stop by himself. The suspect vehicle turned into a gas and convenience store. As Rivas began the process of detaining the two individual suspects and waited for backup, Berg drove up to use a gas pump. *ECF No. 44, p. 2*.

Upon witnessing the ongoing detention, Berg began filming the detention using his cell phone. *Id*. Rivas demanded that Berg move away from the scene of the detention. *Id*. at pp. 2-3. Berg stayed positioned at the gasoline pump and continued filming. *Id*. at p. 3. Rivas moved away from the ongoing detention and approached Berg demanding that he leave and questioning why he was filming. Rivas was confrontational and used profanity. When Berg stated he would remain and film, Rivas returned to the suspects. *Id*.

After some time, Officer Gandara and another unnamed officer arrived to assist Rivas in his investigation and detention of the suspects. *Id*. at pp. 3-4. The unnamed officer positioned himself next to Berg. Gandara remained with Rivas and the suspects. At some point during the detention and investigation of the suspects, Rivas activated his vehicle-mounted spotlight and aimed it in Berg's direction.[1] *Id*. at p. 3. Berg immediately moved further from the place of the detention to avoid the spotlight's glare and continued filming. *Id*. at p. 4. The unnamed officer moved with Berg and remained at his side. Gandara shouted at Berg, "Hey, get over here!" and, while approaching Berg, shouted, "If you get near this traffic stop, you're gonna go to jail." Berg responded that the light was in his camera and this constituted a First Amendment violation. Gandara continued to threaten Berg, saying many times, "I'm telling you if you get closer to this traffic stop, you're gonna go to jail." *Id*. Gandara engaged Berg in a confrontational manner due to Berg's filming and use of the camera, which Berg describes as:

> Gandara adds, "It's ridiculous, man. People are trying to do an investigation, and you don't have a life?" [Berg] replies, "You shouldn't be afraid of a camera." Gandara responds, "Oh, I'm—trust me, we're not afraid of you." [Berg] answers, "He shouldn't shine his light in my—" but Gandara says, "You're the last person we're afraid of." [Berg] repeats, "He shouldn't shine his light in my camera." Gandara says, "Yeah, but when we're having to worry about something else, and then you, right next to us recording—" [Berg] responds, "You shouldn't worry

---

[1] The First Amended Complaint is silent as to the duration of the shining of the spotlight in Berg's direction and as to Berg's position relative to the scene of the detention and Rivas's patrol vehicle.

about me." Gandara replies, "Well, obviously you've never done this job before. So, you clearly doesn't [sic] know what comes with it."

*ECF No. 44, p. 4.*

After some time and the arrival of more officers, Berg approached a supervising sergeant and asked, "'You're the sergeant here? Sergeant?' The sergeant replied, 'What?' Berg stated, 'You should tell your guys not to shine a light—when we're filming like this. You should tell him that he shouldn't be shining his bright light in my face like that. That's not good.' The sergeant smirked and replied with an indifferent, 'Okay.'" *Id.* at p. 5. About twenty minutes later, Berg stopped filming and "briefly reminded the officers that filming shouldn't bother police" and "left the scene without further confrontation." Id.

Berg filed a formal complaint with the San Antonio Police Department (SAPD) two days later. *Id.* An unnamed sergeant called, and upon talking with Berg about the incident, stated the only problem he saw was Rivas's use of profanity toward Berg, denying any other misconduct. On May 7, 2024, Berg delivered a formal demand letter to the SAPD Headquarters and SAPD South Substation and sent a copy of the demand letter "to city officials." *Id.* at p. 6. Berg asserts "[t]he letter requested redress and threatened litigation if no apology was issued and no discipline was verified." *Id.* On May 9, 2024, an SAPD captain called and informed Berg that Rivas had been "'reprimanded for language.' *Id.* The captain acknowledged no other police misconduct." Berg asserts he was upset that he received no apology or other follow-up. *Id.*

Berg filed this action against the City of San Antonio and Officers Rivas and Gandara. Against Rivas, Berg asserts a cause of action under 42 U.S.C. § 1983, alleging "First Amendment retaliation." *Id.* at pp. 7-9. As a result, Berg alleges he

> suffered humiliation, anxiety, and emotional distress from the encounter. That distress was compounded by multiple dismissive and indifferent responses from SAPD superiors after [Berg] reported the incident, leaving [Berg] with diminished

trust that SAPD will respect and protect [Berg's] First Amendment rights. Since the incident, [Berg] has experienced persistent worry about unlawful retaliation if he exercises his right to record, has hesitated to film police he has encountered, and has adjusted his movements to avoid police activity when feasible. These injuries are ongoing.

*Id*. at p.6.

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F.Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could

4

prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones*, 188 F.3d at 324).

A complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear that amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena,* 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff alleged his best case or amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## DISCUSSION

In the First Amended Complaint, Berg asserts a cause of action against Rivas under 42 U.S.C. § 1983, alleging violation of his constitutional right of by retaliating against him for engaging in free-speech protected conduct, that is "first amendment retaliation." *ECF No. 44, p. 7*. To state a cause of action for violation of § 1983, a plaintiff must allege the violation of a right

5

secured by the Constitution and laws of the United States and must allege the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Rivas does not dispute he is a state actor, however, he asserts he is immune from suit under § 1983 liability under the qualified immunity doctrine, and therefore, is entitled to dismissal of this suit against him. *ECF No. 54*.

Qualified immunity "attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity establishes immunity from suit rather than a mere defense to liability. For this reason, a court must resolve the issue at the earliest possible stage of litigation, and the burden falls on the plaintiff to overcome the assertion. *Pearson*, 555 U.S. at 231–32; *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). To overcome qualified immunity, a plaintiff must show (1) the official's conduct violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). A court can begin its assessment with either prong, but both must be satisfied to deny immunity. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

**First Prong: Violation of a Constitutional Right by Retaliation**

### First Amendment Retaliation

The First Amendment prohibits not only a direct limit on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities. *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). This prohibition prevents gov-

ernment officials from imposing serious penalties in retaliation for an individual's speech to inhibit the exercise of rights in the future, and thus, obtain indirectly a result that it could not command directly. *Id.* at 509–10; *Perry v. Sindermann,* 408 U.S. 593 (1972). Therefore, the First Amendment prohibits direct limitations on speech as well as adverse government action in retaliation for an individual's exercise of their First Amendment rights. *Colson*, 174 F.3d at 508–09.

To assert a First Amendment retaliation cause of action, a plaintiff must allege facts to plausibly support a showing that: (1) the plaintiff was engaged in constitutionally protected activity; (2) the officer's action caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). While the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out, because someone is engaging in free speech does not mean "officers cannot execute their law enforcement duties." *Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024); *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "Rather, officers cannot execute their law enforcement duties ... in retaliation of speech or as imposed censorship." *Grisham*, 93 F.4th at 909*; Daywalt v. Blanquiz*, No. SA-24-CV-00222, 2025 WL 1090917, at *7 (W.D. Tex. Feb. 13, 2025), report and recommendation adopted, 2025 WL 799514 (W.D. Tex. Mar. 12, 2025). Thus, a first amendment retaliation cause of action is only applicable "when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Hartman*, 547 U.S. at 256

Pertaining to the second element, "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). This consid-

eration must be tempered with the purpose of the cause of action, that is, the Court must also be mindful that "[t]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* Thus, while the plaintiff must be able to plausibly show his exercise of free speech was curtailed, the focus must remain on "whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Keenan*, 290 F.3d at 259–60 (quoting *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001)). As for the third element, a plaintiff must allege facts to plausibly show the officer acted with retaliatory motive in deterring the exercise of a constitutional right. *Batyukova*, 994 F.3d at 730 (quoting *Hartman*, 547 U.S. at 260.

Specific to Rivas, Berg alleges in the First Amended Complaint, he engaged in constitutionally protected activity by openly recording the police officers from a lawful vantage point. In response to Berg's recording, Rivas ordered him "to leave ('Why are you recording? … Get out of here, dude.') and shone a spotlight into [Berg's] camera, forcing [Berg] to move and alter his filming position." Berg alleges Rivas's action of shining the spotlight, would chill a person of ordinary firmness from continuing to record, and his free speech was hampered when he moved out of the way of the spotlight to continue filming. Berg alleges Rivas's adverse actions of shining the spotlight and confronting Berg were substantially motivated by Berg's filming, and Rivas's demeanor in the situation demonstrates "this behavior was punitive and not the product of any legitimate, content-neutral law-enforcement objective." *ECF No. 44, pp. 2-7.*

Berg sufficiently alleged the first element by referencing the right to record the police while maintaining a safe distance. The facts and the incident, in and of themselves, however, cannot sufficiently allege plausible support for the second and third elements. Berg does allege Rivas's shining of the spotlight in his direction chilled his recording activity and hampered his

free speech by making him move out of the way of the spotlight to continue filming; however, the fact that Berg immediately moved out of the spotlight's glare and continued recording for another ten minutes before he voluntarily left the scene without further confrontation, dispels any chilling effect on his exercise of free speech. *ECF No. pp. 2-3*. Berg does not contend the glare of the spotlight prevented any important or vital recording of the detention. Rivas's shining of the spotlight in Berg's direction simply required Berg to change his position.

Importantly, though, the Court must focus on whether the shining of the spotlight would deter a "person of ordinary firmness" from continuing to record the detention under these circumstances, rather than whether Berg was deterred. *Keenan*, 290 F.3d at 259–60. Yet, even after viewing the allegations in the light most favorable to Berg, the Court does not find Rivas's action of shining a spotlight in Berg's direction would have chilled a person of ordinary firmness from continuing to record the detention. Rivas's described action of shining the spotlight was not violent or confrontational; Rivas did not physically threaten Berg; Rivas continued to conduct the detention and investigation without further attention to Berg. The unnamed officer assigned to Berg allowed him to move and did not prevent Berg's continued filming.

Based on the current allegations, Berg is not entitled to a reasonable inference that Rivas's shining a spotlight in his direction would chill an individual of ordinary firmness from continuing to record the police activity. With this deficiency, this situation does not support the second element of Berg's cause of action, and no pleading amendment would cure this deficiency. For this reason, under these specific facts Berg cannot plausibly allege a cause of action for first amendment retaliation.

Even though Berg's cause of action fails at the second element, similarly Berg does not plausibly allege that Rivas's spotlight-interference was substantially motivated by Berg's record-

ing of the detention. Berg does allege Rivas's shining the spotlight in his direction was motivated by Berg's filming, and Rivas's hostile and confrontational demeanor in the situation demonstrates this behavior was punitive and not the product of any legitimate, content-neutral law-enforcement objective. However, even construing these facts and the situation in the light most favorable to Berg, these allegations are conclusory. Rivas's action of shining a spotlight does appear reasonable due to the time of night of the incident, the need for illumination to investigate the vehicle based upon the presence of a firearm in the reported aggravated robbery, and the need to secure the officers' safety.

Based on the current allegations, Berg is not entitled to a reasonable inference that Rivas's action of shining a spotlight in Berg's direction was in retaliation of Berg's recording. With this deficiency, this situation does not support the third element of his cause of action, and no pleading amendment would cure this deficiency. For this reason, under these specific facts Berg cannot plausibly allege a cause of action for first amendment retaliation.

The Court finds that based on the current allegations, Berg cannot satisfy the second and third elements of his cause of action against Gandara for first amendment retaliation

Analysis of a Federal Rule 12(b)(6) motion to dismiss shifts from typical consideration when a defendant seeks dismissal based upon qualified immunity. In addition to the Federal Rule 12(b)(6) standard of dismissal, the Court must also consider the standard for asserting qualified immunity. "Qualified immunity is a defense [from suit] available to public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine applicability of a public offi-

cial's qualified immunity defense from suit, a court considers if the plaintiff can demonstrate a violation of a constitutional right and if the right was "clearly established" at the time of the public official's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[C]ourts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). Here, because Berg cannot state a plausible violation of his right to film police activity and cannot state a plausible cause of action for retaliation for his exercise of his right to film police activity, he cannot overcome Gandara's assertion of qualified immunity from suit.

Therefore, Gandara's Motion to Dismiss based upon qualified immunity will be granted.

### CONCLUSION

For the reasons stated Defendant Rivas's Motion to Dismiss is **GRANTED**. *See ECF No. 54*.

It is so ORDERED.
SIGNED this 28th day of January, 2026.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE

11