**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**


**KEVIN J. BERG,**

   *Plaintiff,*

**v.**                                        **CASE NO.  SA-25-CV-00661-JKP**

**OFFICER THOMAS MICHAEL**
**RIVAS, BADGE #1640,  CITY OF SAN**
**ANTONIO, M. GANDARA, BADGE**
**#252;**

   *Defendants.*


<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant the City of San Antonio's (the City) Motion to Dismiss for Failure to State a Claim. *ECF Nos. 47, 60*. Plaintiff responded. *ECF No. 58*. Upon consideration the Motion to Dismiss is **GRANTED**.

**FACTUAL BACKGROUND**

At this stage, the Court accepts all well-pleaded facts in the First Amended Complaint as true. *See Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019); *ECF No. 44*. Plaintiff, Kevin Berg, alleges the following: This case arises from an encounter between Berg and Defendant Officers Rivas and Gandara. At approximately 10:00 p.m. on April 11, 2024, while on patrol, Officer Rivas encountered a vehicle and possible suspects reported to be involved in a recent reported crime. Rivas activated his overhead emergency lights to conduct the traffic stop by himself. The suspect vehicle turned into a gas and convenience store parking lot. As Rivas began the process of detaining the two individual suspects and waited for backup, Berg drove up to use

1

a gas pump. *ECF No. 44, p. 2*. Upon witnessing the ongoing detention, Berg began filming the detention using his cell phone. *Id*. Rivas demanded that Berg move away from the scene of the detention. *Id*. at pp. 2-3. Berg stayed positioned at the gasoline pump and continued filming. *Id*. at p. 3. Rivas moved away from the ongoing detention and approached Berg demanding that he leave and questioning why he was filming. Rivas was confrontational and used profanity. When Berg stated he would remain and film, Rivas returned to the suspects. *Id*.

After some time, Officer Gandara and another unnamed officer arrived to assist Rivas in his investigation and detention of the suspects. *Id*. at pp. 3-4. Gandara placed one of the suspects in his squad car. The unnamed officer positioned himself next to Berg. Gandara remained with Rivas and the suspects. At some point during the detention and investigation of the suspects, Rivas activated his vehicle-mounted spotlight and aimed it in Berg's direction.[1] *Id*. at p. 3. Berg immediately moved further from the place of the detention to avoid the spotlight's glare and continued filming. *Id*. at p. 4. The unnamed officer moved with Berg and remained at his side. Gandara shouted at Berg, "Hey, get over here!" and, while approaching Berg, shouted, "If you get near this traffic stop, you're gonna go to jail." Berg responded that the light was in his camera and this constituted a First Amendment violation. Gandara continued to threaten Berg, saying many times, "I'm telling you if you get closer to this traffic stop, you're gonna go to jail." *Id*. Gandara engaged Berg in a confrontational manner due to Berg's filming and use of the camera, which Berg describes as:

> Gandara adds, "It's ridiculous, man. People are trying to do an investigation, and you don't have a life?" [Berg] replies, "You shouldn't be afraid of a camera." Gandara responds, "Oh, I'm—trust me, we're not afraid of you." [Berg] answers, "He shouldn't shine his light in my—" but Gandara says, "You're the last person we're afraid of." [Berg] repeats, "He shouldn't shine his light in my camera." Gandara says, "Yeah, but when we're having to worry about something else, and

---

[1] The First Amended Complaint is silent as to the duration of the shining of the spotlight in Berg's direction and as to Berg's position relative to the scene of the detention and Rivas's patrol vehicle.

then you, right next to us recording—" [Berg] responds, "You shouldn't worry about me." Gandara replies, "Well, obviously you've never done this job before. So, you clearly doesn't [sic] know what comes with it."

*ECF No. 44, p. 4.*

After some time and the arrival of more officers, Berg approached a supervising sergeant and asked, "'You're the sergeant here? Sergeant?' The sergeant replied, 'What?' Berg stated, 'You should tell your guys not to shine a light—when we're filming like this. You should tell him that he shouldn't be shining his bright light in my face like that. That's not good.' The sergeant smirked and replied with an indifferent, 'Okay.'" *Id*. at p. 5. About twenty minutes later, Berg stopped filming and "briefly reminded the officers that filming shouldn't bother police" and "left the scene without further confrontation." Id.

Berg filed a formal complaint with the San Antonio Police Department (SAPD) two days later. *Id*. An unnamed sergeant called, and upon talking with Berg about the incident, stated the only problem he saw was Rivas's use of profanity toward Berg, denying any other misconduct. On May 7, 2024, Berg delivered a formal demand letter to the SAPD Headquarters and SAPD South Substation and sent a copy of the demand letter "to city officials." *Id*. at p. 6. Berg asserts "[t]he letter requested redress and threatened litigation if no apology was issued and no discipline was verified." *Id*. On May 9, 2024, an SAPD captain called and informed Berg that Rivas had been "'reprimanded for language.' *Id*. The captain acknowledged no other police misconduct." Berg asserts he was upset that he received no apology or other follow-up. *Id*.

Berg filed this action against the City of San Antonio and Officers Rivas and Gandara. Against Rivas and Gandara, Berg asserts a cause of action under 42 U.S.C. § 1983, alleging "First Amendment retaliation." *Id*. at pp. 7-9. As a result, Berg alleges he

> suffered humiliation, anxiety, and emotional distress from the encounter. That distress was compounded by multiple dismissive and indifferent responses from

> SAPD superiors after [Berg] reported the incident, leaving [Berg] with diminished trust that SAPD will respect and protect [Berg's] First Amendment rights. Since the incident, [Berg] has experienced persistent worry about unlawful retaliation if he exercises his right to record, has hesitated to film police he has encountered, and has adjusted his movements to avoid police activity when feasible. These injuries are ongoing.

*Id*. at p.6. Against the City, Berg asserts a cause of action for municipal liability under 42 U.S.C. § 1983 alleging the officers' execution of its policy, practice, or custom inflicted a constitutional injury pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978).

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F.Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the

4

claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones*, 188 F.3d at 324).

A complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear that amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena,* 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff alleged his best case or amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## DISCUSSION

In the First Amended Complaint, Berg asserts a cause of action against the City for municipal liability under 42 U.S.C. § 1983 alleging the officers' execution of its policy, practice,

or custom inflicted a constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Berg alleges "[T]he City maintains policies, customs, and practices that caused [his constitutional] injury, including: (a) failure to track, categorize, and analyze recording-related complaints; (b) post–*Turner* failure to adopt and implement adequate training and supervision instructing officers that citizens may record from publicly accessible areas and prohibiting retaliatory tactics; (c) failure to consistently investigate and discipline filming-related misconduct; and (d) leadership statements reinforcing skepticism toward citizen recording." Dkt.44 pars. 60-75.

In its Motion to Dismiss, the City contends the officers did not violate Berg's constitutional right to film police activity, and without a properly-pleaded constitutional violation, the cause of action against the City must fail. *ECF No. 47*. Berg responds with the same arguments presented in response to Rivas's and Gandara's Motions to Dismiss: Rivas's shining the spotlight to preclude his filming and Gandara's threat of arrest would chill a person of ordinary firmness from exercising their constitutional right, and the acts were in retaliation to Berg's exercise of his constitutional right to film the detention. *ECF No. 50.*

A municipality is responsible for its own illegal acts and cannot be held liable under § 1983 on a *respondeat superior* theory of recovery. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). To establish a municipality's liability for violation of Section 1983, a plaintiff must assert a viable violation of a constitutional right by a person executing the municipality's policy. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 243 (5th Cir. 2017). Thus, an underlying constitutional violation is an essential foundational element of municipal liability. *Id*. (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012)). When a

6

plaintiff pleads a viable violation of a constitutional right, to then establish municipal liability, the alleged deprivation must be connected to an official custom, policy, practice, ordinance or regulation of the municipality. *Monell*, 436 U.S. at 690–94; *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Flores v. Cameron County*, 92 F.3d 258, 263 (5th Cir. 1996). Thus, to survive a Federal Rule 12(b)(6) challenge to a cause of action of municipal liability, a plaintiff must, first, allege a viable constitutional violation. Then, the plaintiff must allege facts to support: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred by a person acting under the color of state law; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996).

In the Memorandum Opinion and Orders issued this same date in which the Court granted Rivas's and Gandara's Motions to Dismiss, the Court concluded that based upon the factual circumstances alleged, Berg is not entitled to a reasonable inference that Rivas or Gandara's actions would chill an individual of ordinary firmness from continuing to record the police activity, and Berg cannot plausibly allege Rivas or Gandara's threat of arrest were substantially motivated by Berg's recording of the detention. With these incurable deficiencies, Berg cannot plausibly allege a deprivation of a constitutional right, and therefore, cannot plausibly allege first amendment retaliation.

Because the Court finds Berg cannot satisfy the essential foundational violation of a constitutional right, the Court does not reach the issue whether Berg asserted a plausible cause of action of municipal liability against the City under *Monell*. The City's Motion to Dismiss will be granted.

**CONCLUSION**

For the reasons stated in this Memorandum Opinion and Order, and the supporting

Memorandum Opinion and Orders granting Rivas' and Gandara's Motions to Dismiss, the Court

**GRANTS** the City of San Antonio's Motion to Dismiss.

It is so ORDERED.
SIGNED this 28th day of January, 2026.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE